The first case for argument is 21-1489 Monticota, United States v. Donavan White Owl Thank you. Ms. Healy? Good morning. May it please the court, my name is Megan Healy and I represent the United States in this matter. In this interlocutory appeal, the United States is asking this court to do two things. First, to recognize the spousal victim exception to the marital confidential communications privilege. The overwhelming weight of authority applies this exception to the communications privilege. The United States now asks this court to do the same. Second, to apply the spousal victim exception to White Owl's statements that he poured gasoline throughout the cabin because he thought his wife was inside. Specifically, the United States asks this court to correct the district court's legal errors, concluding that the spousal victim exception applies only to statements that are threats and only when the spouse is a victim of the charged crime. The United States also asks this court to correct the district court's clearly erroneous factual findings. It's finding that White Owl's statement was one of reconciliation, has no record support, and is contradicted by the entirety of the record. And it's finding that Ms. Cook is not a victim of the arson, is so substantially against the weight of the record as to constitute a clear error. What is our standard of review for these your challenges at this stage of the proceeding to what you call findings? Your Honor, the standard of review here is de novo. This is a case where this court is considering... But these are fine, you just labeled them findings. I agree it's de novo on the ultimate issue, but in many, most, for example, suppression appeals, if there are actual findings, they're reviewed for clear error. What's different about this? Yes, Your Honor, I believe in our brief we set out for the factual findings a clear error standard, a definite and firm conviction that a mistake has been made. In argument two of our brief, that is the standard of review as to the particular factual findings. But as to the ultimate question here, one of the delineation of the federal testimonial privilege, this court reviews the mixed findings of fact for the applicability of the privilege and the law as to the scope of the privilege, and this court reviews that de novo. In this case, we're asking the court to consider the application of a testimonial privilege. The presumption here is that the evidence comes in and testimonial privileges are construed narrowly. This is particularly true in criminal proceedings, where testimonial privileges are construed particularly narrowly because of society's strong interest in the administration of justice.  It expansively interpreted the communications privilege by a succeedingly limited construction of the spousal victim exception. It did so in two ways. First, the district court concluded that the spousal victim exception does not apply to communications unless they are threats or are they themselves crimes. The United States has identified no authority limiting the spousal victim exception only to statements that are threats. Indeed, three of this court's sister circuits have applied the spousal victim exception to communications that were not themselves threats. The first circuit in Breeton- I thought Allery did. Your Honor, Allery was a case in which this court considered the anti-testimonial privilege as opposed to the marital confidential communications privilege. You don't have any cases on the marital confidential communication privilege. That's what this is all about. No case has ever done this. Well, of course not. No case has recognized the exception that you're arguing for. Your Honor, three of this court's sister circuits have recognized the spousal victim exception to the marital confidential communications privilege. The first circuit in Breeton from 2014. There, the communications at issue were not a threat. Okay, those are in the briefs. That's fine. Yes, and I'd also like to point out, again, you're right, the 10th circuit in Bahi is in the brief, but also the 6th circuit in Underwood from 2017. That is not in our brief. I filed a 28J letter two days ago identifying that. So there are three circuits that have applied the marital contributions confidential communications privilege to statements. And indeed, the 9th circuit in Bahi was in 1992. But in the White case, the statements and the communications at issue were threats. In Breeton, Bahi, and Underwood, the communications themselves were not threats. And the district court's conclusion that the statements must be threats are contradicted by those circuits' cases. The communication here, and admission that Whitehall- Why wouldn't we follow our own precedent in Allery if we enlarge the application of the exception to this privilege? I would encourage the court to follow its precedent in Allery. Allery, however, did not address the communications front, which is why we cite to this court's sister circuits who have addressed the communications privilege. But we do encourage the court to apply Allery's definition of a victim. That is the district court's second legal error, and that it held that it must be only a victim of the charged crime. That holding, as your honor may have been suggesting, is not in line with Allery. In fact, it squarely conflicts with Allery. Allery, in dealing with the anti-testimonial privilege, described the spousal victim exception as a well-established exception where one spouse commits an offense against the other. This court then said, an offense against the other has been broadly interpreted to include any personal wrong done to the other, whether physically, mentally, or morally injurious. This definition, for the purpose of the spousal victim exception, is broader than the district court's application, which limited it to victims only of a charged crime. And indeed, multiple states within this circuit apply the spousal victim exception to cases where the spouse is charged with a crime against a third party that did not, that occurred in the course of committing a crime against the spouse. Those states are Arkansas, North Dakota, and South Dakota, and those rules are cited in our brief. The district court here defined the parameters of a federal testimonial privilege by the charging decision of the prosecutor, or in this case, the grand jury, rather than by looking to the communication at issue and the context in which it is made. The protection of that communication is the only purpose of the federal testimonial privilege and should not be defined by the contours of the indictment. And indeed, this court in Smith applied the spousal victim exception to a case in which the wife, who was the testifying spouse, was not the victim of the charged crime. There, this court determined she was the victim of an offense against the other within the meaning of Valerie, where her husband was subject to criminal prosecution on drug charges. The offense against her in that case was that he had subjected her to criminal prosecution herself by placing drugs on her person. She was not the victim of charged crime. When you take the proper understanding under this court's precedent of what a victim of an offense against the other is, the purposes of the spousal victim exception, it becomes clear that Ms. Cook was a victim through three different lenses. First, she was the intended victim of the arson. The record at this point is uncontradicted on that, and indeed, the district court acknowledged it. Second, she was the victim in an ongoing domestic violence crisis. We've covered the facts of this ongoing domestic violence crisis at length in our brief, and I won't repeat them all here. But she described a harrowing two days in which she was balancing Whitehall's anger against her and her own fear and trying to stay alive. Indeed, as she told the agents in her first interview in the immediate aftermath of this experience, she just kept thinking he was going to kill me. And third, Ms. Cook is an actual victim of the arson. This is where we are asking this court to recognize the district court's clear error and to correct it. We've cited record citations in our brief for this point. There's an additional one that is not in our brief that I want to bring to the court's attention on this point. The defendant below in his memorandum in support of his motion to suppress, which is document 60 at page 5. Why do I have to get there if you're right about the other two aspects of victim? Your Honor, you don't have to get there. If we are correct about the other two, we're giving you three different lenses to look at, but we believe strongly that Ms. Cook is a victim through all three of the lenses. As to the one record citation that is not in our brief, document 60 at page 5. This is White Owl's memorandum in support of his motion to suppress. There he argued that he and Ms. Cook were tenants of Veronica Serdal's at the cabin, that they had lived there for a month, and that in lieu of paying traditional rent, White Owl did work around the property. In light of these concessions from White Owl, it is clear that the district court's in the property, and that Ms. Cook herself did not own the property, was clear error in light of the uncontroverted question that she lived at the property. Indeed, in both of her recorded interviews, which are both in the record, Ms. Cook described that she had been living with White Owl in Mandaree with Cody Serdal until a couple days before the first interview. She explained toward the end of that interview that she and White Owl were planning to move to Bismarck, suggesting that they were supposed to be in Bismarck by the 15th of that month. This shows that they were in transit during the time that they were living at the cabin. And at the end of the interview, the agent asked her what her plans are. She did not say she was going back to some other residence that she may have. Rather, she said she was going to ask her sister if she could stay with her. A few weeks later, Ms. Cook in her second interview started out by saying things have been hard because she had nowhere to live. And at the end of that interview, she again referred to trying to find housing. And finally, in the record at document 107-1, Veronica Serdal, the owner of the home, in the midst of fire suppression efforts, drew a map for the firefighters so that they could look for the people who were not located. And she labeled one of the rooms in her own home as DJ and Tara's room. That's Mr. White Owl's and Ms. Cook's room. In the light of this substantial record evidence showing the fact that White Owl and Ms. Cook were living at the cabin, Ms. Cook was an actual victim of the arson. And the District Court's finding is so substantially against the weight of the record as to constitute a clear error. Your Honor, as I see I'm approaching my rebuttal time, if you don't have more questions, I'll reserve the remainder of my time for rebuttal. Well, yes, Counsel, I do have, this is off the butane track, but I wanted to ask you, in United States v. Hawkins, the Supreme Court held that the adverse testimonial privilege could be invoked by either spouse. In United States v. Trammell, the Supreme Court overruled Hawkins based on the common law tradition of that privilege, the scope of privileges can evolve over time. Now that tells me that the marital communication privilege would be subject to the same evolutionary argument. Did you preserve that issue? Your Honor, we did not raise that issue in our briefs. Thank you very much. I will reserve the remainder of my time. Mr. Greenlee? You're muted, Counsel. Still muted. Can the court hear me now? There we go. Okay. Thomas Murtha, I represent Donovan White Owl as the appellee in this matter, the government's interlocutory appeal from the granting of a motion in limine regarding the statement made by Mr. White Owl to his wife in confidence regarding pouring gasoline in and around the house. The district court originally pointed out that the court's role... What makes it confidential other than the remote location where it occurred? I think the district court also addressed that. As a technical matter, when people are married and they're having... Let me rephrase the question. What's the standard for determining? What do we look at to determine whether it was confidential? Just the judge's Oh, I think it was. No, it's more than that. There's a presumption that begins with the fact that the parties are married. The conversation or the exchange has to take place under circumstances where other people aren't privy to it. It's intended to be confidential in a sense that it's between the couple that is married and it regards or wouldn't have occurred but for the fact that they're married and that is part of their relationship. In cases that have addressed this issue, if it was done where someone was in earshot of it, for example, sometimes when you're exposing it to being recorded, it's not considered confidential. But when the parties are married and they're alone, it's presumed to be confidential. And then the court can further look at the circumstances surrounding... What's the case for that proposition? Which there's several there, your honor. I'm sorry. When the parties are married and alone, it's presumed to be confidential. I don't have that off the top of my head, but I believe that the district court included that in its memorandum. And that's where I was going with this was that the district court pointed out that in light of the motion in limine that the district court believed that it was first to determine whether or not the confidential marital privilege would apply at all. And the court first determined that it did. I don't believe that the plaintiff is arguing that it didn't to begin with, but then the next step would be if the confidential marital privilege does apply, is there an exception? And the court looked to Tremel as far as the process goes to determine whether or not an exception would apply. Not Tremel, I'm sorry, Allery. Use the same analysis in Allery to determine whether or not what's being coined the spousal victim exception would apply to the confidential marital privilege. And use that same analysis from Allery to determine that it didn't because the court first determined as a factual matter that Mr. Whitehall's wife was not a victim. And then also determined that the statement regarding the pouring the gas in and around the home was not a threat to his wife. So as a factual matter, taking those fact findings then applying them as the court did in Allery, only instead of applying it to whether or not the defendant's wife would testify at all. Let me stop you on your argument. The trial court just applied the very good analysis in Allery on whether to extend the exception. But Allery was dealing with expanding the spouse exception to children. And the analysis was the foundation was advisory committee and the federal rules of evidence. I don't think there was any such analysis here, was there? What learned body has urged this extension? I'm not aware of any. And I don't believe that the trial court was either. From going from spouse to children is at least intuitively less dramatic than going from one privilege to an entirely different privilege. Yes. So in the course of our motion and the pointing out that thus far the 8th Circuit hasn't addressed this issue. And the trial court tried to do that using the same analysis from Allery and did not examine whether or not it was appropriate to do so. That's true. It does seem that the trial court didn't make that, didn't establish that foundation regarding the two different privileges. And I think it's significant. Yes. Yes. Would you agree that the evidence shows that the defendant committed a crime against Cook even if it was not the arson crime? I don't. I don't see the crime that he committed against Cook. What are we talking about? Well, the government says that he attempted to kill her. Okay. I don't agree with that. It just so happened that she had snuck out into the car, but that he thought she was in the bedroom. Well, okay. And threw out the house and then burned it down and fled and only later found out that she had been hiding in the car. So let me just finish the question. Yes. Now you've asked for clarification. I understood the district court to say she was not a victim of the arson crime because the judge thought she had no property in the house and therefore was not a victim of the arson. I'm asking, would you agree that she was the victim of another crime such as attempted murder or attempted assault or something like that? When I review the record and Ms. Cook, the defendant's wife, this is all presented as hearsay and recording. She actually never testified. But when you review that, there's a number of inconsistencies here. So the government argues and there may be statements that the defendant's wife is saying that he went through the rooms and poured gas. So he knew she wasn't there. He knew who was in the basement regarding Winifred Smith, the person that died, and Cody were in the basement. He knew they were there. So you're saying there's a factual dispute about whether he committed a crime against her, I guess, is your position. He didn't know she was in the house because he was in the house apparently pouring gas around. So he knew she wasn't there. How do you get that? Okay, thank you. Because if you read the entire record of what she's saying and that she's saying that the defendant, Mr. Whitehall, is going into the house pouring gas all around it, specifically goes into their room and pours gas there and pours gas around the outside of the house, which by the way is inconsistent with the forensics that show that just the opposite. But he knew she wasn't in the house based on that. But then when she's making these statements, the only time that she says that Whitehall said this, the rest of the time she's saying he thinks this versus he said this. Now she was never subject to cross-examination. She didn't testify. These are recordings taken from interviews with law enforcement. I don't think there's attempted homicide. To follow up on that, let's assume for the sake of discussion that there was a crime against Cook but not arson. Do you agree that there's an established exception to the marital confidential communications privilege in a proceeding against a third person if the crime that's charged was committed in the course of committing another crime against the spouse? Okay, I know there is not three circuits. Three states in our circuit adopt that and I believe it's in the model code of any dispute with that being part of the common law. Regarding the third person we're talking about, and I'm very familiar with North Dakota's rule, it involves a child victim, not just any third party. Well, the language says third person. It doesn't say child. So the argument here would be there was a crime committed against the people in the house in the course of committing a crime against the spouse, namely attempted murder or attempted assault and so forth. If those were the facts, would the exception apply? I don't believe so. Just from what you're telling me now and for what I know of the rule, and I'm applying it in North Dakota, I don't believe that it would under that analysis. But... Okay, well I'm trying to understand why if there was a crime against a third person, namely the two people in the house, and it was committed in the course of committing the attempted murder against the wife, why doesn't that fit right into the exception? Okay, so that we're not talking about... Which jurisdiction are we talking about? U.S. District Court for the District of North Dakota applying the common law. I don't think that... Okay, I think that that would be... To do that under the common law would be an expansion. I think that there are jurisdictions that might have to be expanded. Either by an evidentiary rule or statute. I don't think that's the way we would interpret it in North Dakota regarding the third party. Okay, but I mean I understand what the court's saying regarding... And we're talking about the confidential marital privilege, not whether or not the other exception, whether or not... In North Dakota and other jurisdictions, there's also an exception in a proceeding for a crime against an individual residing in the household of the spouse. Yes. Why wouldn't this case fit that exception, even if the only victims were the other two people living in the house with White Owl and Cook? Weren't they residing in the household of White Owl and Cook? That was not raised in the original argument, but that was a temporary housing. They were living elsewhere and they just stay there when he was doing work. So I don't believe necessarily that that was their household and the evidence supports that they didn't have anything there. They would sleep there occasionally, but that wasn't their household. Okay. Thank you. I guess I'm getting to the end of the time here. In conclusion, the trial court made a fact finding based on interviews that law enforcement conducted on various individuals, and went into great detail both in its original memorandum and in response to the motion to reconsider. The record does in fact support the trial court's fact finding, and the government doesn't agree with it and they're frustrated because they want the district court to see things a different way. But I don't think that that should be a luxury they should be afforded. I think that the analysis that was done by the district court in light of this having yet to be addressed within the Eighth Circuit was sound. Yet, there's still the issue of the applicability to the exception. The court used hourly. I do think that was an appropriate framework to use. But I think that if this court is going to extend that exception, that it needs to be wary that the confidential marital privilege is limited in itself to just those privileged communications. It doesn't bar any other testimony other than those specific, very narrow communications, and it might not be necessary to extend it at all in light of that. Thank you. Thank you, counsel. Is there a rebuttal time? I think there's some. There you go. You got two and a half minutes. Thank you, your honor. I'd like to respond first to counsel's argument that this was not their household and they only stayed there occasionally. This assertion is contradicted by the record and is directly contrary to the defense's position below. In document 60 at page 5, where he argued that Whitehall and his wife were tenants of that house, nothing in the record suggests that. Indeed, Cook's statements that Whitehall poured gasoline throughout the house because he thought she was inside are consistent. She does not make an inconsistent statement. I point the court to her April 6, 2019 interview that timestamps 20 minutes, 35 seconds through 24 minutes, 30 seconds. And again, later in that same interview, starting around 42 minutes and 5 seconds. She is consistent on this point. What about on the crime against the third person exception? I didn't see where the judge made any conclusion about whether there was a crime committed against Cook other than arson. Was that issue presented? No, your honor. It was not presented because of the way that the defense raised this issue. The defense argued in its motion in limine that the confidential communications privilege applied and the partners in crime exception did not apply. The United States argued that the spousal victim exception applied and the defense's position was simply that the spousal victim exception did not apply. I don't understand why the government didn't argue the third person exception or the household exception in response to the motion in limine. And if it didn't, where does that leave us? Your honor, as I said earlier, there are three lenses at least through which Ms. Cook is a victim. And we would argue that as the intended victim of the crime charge, as the actual victim, and as the victim in an ongoing domestic violence crisis, the context in which is critical to understand the context in which the communication at issue was made. Your honor, I see I'm out of time. I just end briefly by saying that the United States believes it would be unconscionable to permit a privilege grounded on promoting communications of love and trust between partners to prevent a spouse whom the defendant intended to and tried to kill from testifying against the perpetrator of such a crime as to the admissions of those acts. The United States respectfully asks this court to reverse the rulings of the district court. Thank you. Thank you, counsel. The case has been fully briefed and well argued and we will take another advisement.